**Real R. LUSSIER, Admr. of the Estate of Linda D. LUSSIER**

**vs.**

**UNITED STATES FIDELITY and GUARANTY COMPANY**

**No. 312**

District Court/Hampshire, ss.
Appellate Division/Western District
Trial Court of the
Commonwealth of Massachusetts

**November 4, 1982**

**Kenneth I. Laprade,** counsel for plaintiff. **Salvatore J. Scibelli,** counsel for defendant.

### DECISION AND ORDER

This cause came on to and was heard in the Appellate Division for the Western District sitting in Springfield upon report from the Hampshire Division of the District Court Department and it was found and decided that there was prejudicial error.

It is hereby ordered:

That the Clerk of the Hampshire Division of the District Court Department make the following entry in said case on the docket of said Court; namely: - to amend the judgment of the District Court

to reflect the decision of this Court in terms of the amount of damages recoverable by Plaintiff.

Date: November 4, 1982

**Francis J. Larkin, Justice**
**Mel L. Greenberg, Justice**
**William T. Walsh, Justice**

Opinion filed herewith.

**Robert E. Fein, Clerk**

## OPINION

**Larkin, J.** This appeal centers upon a policy of insurance issued by the United States Fidelity & Guaranty Company to Real R. Lussier, plaintiff below, covering a policy period from January 1, 1973 to January 1, 1974. There was only one policy issued, which, at the inception date of the policy, covered a single automobile - a 1965 Chrysler vehicle. The policy, typical in form and provisions, is described as a "Massachusetts Motor Vehicle Liability - Physical Damage Policy" and provides the coverages set forth in the "Declaration" page of the policy. Sometime in February, 1973, a second vehicle - a 1965 Ford Pickup Truck - was added to the policy by endorsement so that from that date until the accident of December 6, 1973, the relevant policy covered both vehicles.

On December 6, 1973, the plaintiff's ten-year old daughter, Linda Lussier, while riding her bicycle, was struck and killed by a motor vehicle operated by one Ronald G. Thomas. It was conceded that the motor vehicle in question was an "uninsured motor vehicle" within the usually accepted Massachusetts definition of that term. Subsequent to the accident, the plaintiff made claim for arbitration under the provisions of the policy for payment of the Uninsured Motorist Protection benefit under "Coverage U-1." The limit of liability as set forth on the "Declarations" page of the policy for "Coverage U" is $10,000 to each person. However, at the arbitration hearing the plaintiff took the position that the $10,000 limit of liability was collectible twice because "there were two separate vehicles insured." The company took a contrary position arguing that there was but a single limit of liability ($10,000) despite the fact that two vehicles were insured. The case was fully tried before an arbitrator appointed under the Rules of the American Arbitration Association but, prior to a decision being rendered by the Arbitrator, the plaintiff agreed to settle, in effect, a portion of his claim for $10,000. An "Agreement and Release" (central to this appeal), together with an "attached Addendum" was thereafter executed by the parties and payment was made in accordance with said agreement. What precisely the payment was meant to embrace constitutes the subject matter here.

As part of the "Agreement and Release," the parties expressly agreed that $10,000 was the "over-all limit of liability of the defendant for all claims under Coverage U-1, despite the fact that the policy insures two vehicles separately for the same limits of liability." The parties then sought to set forth an area of disagreement with respect to the interpretation of the policy concerning the payment of any putative residual benefits under "Coverage A, Division 2" - Personal Injury Protection (the so-called "no-fault benefits") and "Coverage D" - Automobile Medical Payments. In effect, the plaintiff reserved the right to assert additional claims for benefits which he claimed might be payable under the aforesaid coverages, to the extent of $1.508.56 for Division 2 of Coverage A and to the extent of $1,000.00 for Coverage D. The defendant consistently denied that the plaintiff was entitled to these benefits or any other benefits under the policy and reserved all of its rights, although agreeing to submit these issues to judicial interpretation.

The obvious purpose of the "Agreement and Release" was to permit the plaintiff to settle his claim under Coverage U-1, but at the same time leave open the claims for payment under Coverage A - Division 2 and Coverage D, within the parameters of the "Agreement."

Following the events outlined above the plaintiff filed suit in the district court seeking a resolution of the issues expressly left open under the "agreement." In the context of the prior proceeding, specifically as focused by the "agreement," the plaintiff's district court action raised three issues: (1) Did the policy at issue permit the plaintiff to recover medical and funeral expenses - an agreed amount of $1,508.56 - under "Coverage A, Division 2?"

(2) Did the policy in question permit the plaintiff to recover medical and funeral expenses up to a limit of $1,000.00 under "Coverage D?"

(3) If the plaintiff is entitled to recover under either of the aforementioned coverages, or both, may he recover **twice** - once for **each vehicle** insured?

Following a trial in the court below the district judge answered each of these questions in the affirmative and issued a judgment for plaintiff in the amount of $5,017.16. The self-same issues are the ones before us on appeal. Upon a consideration of the entire record we believe that there was error below in the resolution of these issues. We consider these issues **seriatim.**

The defendant maintains that the plaintiff cannot recover the medical and funeral expenses under Coverage A, Division 2 because "He was already paid this sum of money under the provision of the policy by virtue of the payment made to him of $10,000.00 in March, 1975."[1] We disagree on the facts of this record.

As a matter of straight textual perusal, it is clear that the policy at issue certainly permits the plaintiff to recover medical and funeral expenses under Coverage A, Division 2 (the so-called "P.I.P." Coverage). Both the statute and the policy expressly contemplate for medical and funeral expenses to be paid under the Personal Injury Protection Coverage. The issue is whether the contemporaneous payment of $10,000.00 (notwithstanding the allocation in the "Addendum") snuffs out the residual entitlement. We believe that this entitlement is not extinguished, and the plaintiff is still entitled to the $1,508.56 Claimed under Personal Injury Protection benefits because it cannot be said that the defendant had **previously** paid that benefit to the plaintiff, which payment is a requirement for the deduction that the defendant claims. In other words, as the defendant itself recognizes in its brief, in quoting from the policy, "U-1 Coverage" x x x "shall be reduced by all sums **paid** on account of such bodily injuries x x x" etc, (emphasis added). By definition, since there had been no **prior payment** for this purpose - prior to the $10,000.00 payment described above - then the plaintiff was still entitled to the $1,508.56 claimed under the policy and we agree that the court below was correct in making this award to the plaintiff.

We turn then to the second question, whether, again in the light of the $10,000.00 payment and the "Agreement," the policy at issue still permits the plaintiff to recover medical and funeral expenses incurred up to a limit of $1,000.00 under "Coverage D." We believe that this question must be answered in the negative and that the district judge was in error in making this award.

Again, it is clear that before an insured can reach the $1,000.00 provided by Coverage D - Automobile Medical Payments, his expenses must exceed $2,000.00 and thus, in effect, exhaust the coverage provided by division 2 of Coverage A of the relevant policy. In the policy in question it is stated in the pertinent provisions of Coverage D that, . . . "Provided, however, **no expenses** shall be payable under this coverage which are payable or would be payable but for the application of a deductible, under division 2 of Coverage A of this policy or of any other Massachusetts motor vehicle liability policy." (Emphasis supplied). In

---

[1] This payment, pursuant to the "Addendum," executed by the parties was allocated as follows:
"Coverage U-1", $8,491.44
"Coverage A, Division 2", $1,508.56

32

his complaint in the district court the plaintiff concedes, as he must that "the agreed reasonable expenses incurred for medical and funeral services amounted to $1,508.56." Since this figure is less than the $2,000.00 limit of liability provided under Coverage A, division 2, and further, since this amount was in fact paid to the plaintiff by virtue of the settlement made on March 14, 1975, then it follows, perforce, that the aforementioned language operates to preclude a claim for automobile medical payments under Coverage D.[2] Again, the Court below was accordingly in error in making such an award.

Finally, we turn to the third question, again; "If the Court should find in favor of the plaintiff under Coverage A, division 2 or under Coverage D or under both of said coverages, whether the plaintiff is then entitled to recover **twice** on the basis of having two motor vehicles insured?" The district court answered this question in the affirmative. We believe that this was error.

We start with the language of the policy. With respect to division 2 of Coverage A, the policy contains the following limitation under Paragraph 2, Limits of Liability, Conditions Applicable to Part I "With respect to division 2 of Coverage A and regardless of the number of . . . (4) motor vehicles to which the policy applies the limit of liability for personal injury protection stated in the declarations as applicable to 'each person' . . . is the limit of the company's liability for all benefits payable thereunder to or for each person who sustains bodily injury as a result of any one accident." (b) With respect to Coverage D, the policy contains the following limitation under Paragraph 4, Limit of Liability Coverage D: "Regardless of the number of . . . (4) motor vehicles to which the policy applies, the company's limit of liability for automobile medical payments stated in the declarations as applicable to 'each person' is the limit to the company's liability for all expenses incurred by or on behalf of each person who sustains bodily injury as a result of any one accident."

It is thus plain that the language in the policy in question makes it abundantly clear that the plaintiff should not be permitted to recover twice or, in the familiar argot, to "stack" his coverage. In short, to the extent that words have the power to effectuate a stated objective, it is evident that duplicate coverage is not available merely because the insured has more than one automobile covered by such policy. Nor is plaintiff assisted by the relevant precedent. Indeed, the Northern District of the Appellate Division of the District Courts of Massachusetts has addressed itself to the precise issue of whether or not an insured may "stack" his coverage in cases such as the present. In **Roger Boudreau, ppa vs. Aetna Life and Casualty Company,** 56 Mass. App. Dec. 162 (1975) there were facts and policy language identical to those presently involved here.

---

[2] We believe that the fundamental problem with plaintiff's position in this regard is that the plaintiff has misread the policy exclusion. This "exclusion" does not merely exclude "deductible amounts," but all amounts payable under Division 2 of Coverage A which payment will be made in satisfaction of this judgment. In this context, and on this record, to create coverage and recovery under both the so-called "med pay" and "P.I.P." provisions would be untenable on these facts.

The **Boudreau** case involved an action in contract under Coverage ''D'' (Automobile Medical Payments) of a Massachusetts motor vehicle insurance policy. The vehicle was owned by the minor plaintiff's father and the action sought reimbursement of medical expenses incurred as a result of injuries sustained by the plaintiff, who was struck and seriously injured by a motor vehicle while riding a bicycle. As a result of the accident, the minor plaintiff incurred medical expenses in excess of $5,000.00. The carrier for the vehicle that struck the child paid personal injury protection be ....its in the amount of $2,000.00 to the minor plaintiff. The defendant, Aetna Life and Casualty Company, had issued a single Massachusetts Motor Vehicle Combination Policy to the minor plaintiff's father for the calendar year 1973, covering his two motor vehicles.

The policy included Coverage ''D'' (Automobile Medical Payments) with a limit of $1,000.00 for which a separate charge was paid for each of the two vehicles. The Aetna Life and Casualty Company paid $1,000.00 under Coverage ''D'' of the policy, which payment it contended was full payment under the medical payment provision of the policy. The trial court found in favor of the plaintiff and held that since his medical expenses exceeded $5,000.00, he was entitled to recover $1,000.00 under Coverage D, for each of his father's vehicles covered by the single policy in question. The Appellate Division reversed. It pointed out that the language in the 'policy in question (which is identical to the language in the United States Fidelity & Guaranty Company policy in the instant case) did not provide for double recovery because it stated that, ''Limit of Liability - Coverage D'' - ''Regardless of the number of . . . (4) motor vehicles to which the policy applies, the company's limit of liability for automobile medical payments stated in the declarations as applicable to 'each person' is the limit of the company's liability for all expenses incurred by or on behalf of each person who sustains bodily injury as a result of any one accident;'' and held that, ''the limitation of $1,000.00 for Coverage ''D'' in this policy is the limit per person per accident, and this limit is not multiplied by the number of vehicles insured.''

In another case, the District Court of Appeals of Florida dealt with the issue of whether there could be double recovery under the uninsured motorist clause when one policy covered two vehicles in the case of **Hilton vs. Citizens Insurance Company of New Jersey,** 201, So.2d 904 (1967). In that case the plaintiffs, husband and wife, owned two passenger motor vehicles for which the defendant issued a single automobile liability policy. The policy contained a standard uninsured motorist clause (with language limiting liability identical to that in the United States Fidelity and Guaranty Company policy in question). While the plaintiff wife was driving one of the insured vehicles, she was struck by a truck operated by an uninsured motorist as a consequence of which she suffered personal injuries. The plaintiffs sought to ''stack'' their coverage and recover the limit of liability under the uninsured motorist clause of their policy for each of their two vehicles. The Court held that under the uninsured motorist clause limiting liability in the policy in question, regardless of the number of automobiles covered by the policy, the total limit of the insurer's liability for all damages because of the bodily injury sustained as the result of any one accident was $20,000.00 as set forth in the declarations page and that the policy did not provide maximum of $20,000.00 coverage for each of two vehicles described in the policy and did not afford total coverage of $40,000.00 for each accident. For a similar result, see **Kennedy vs. American Hardward Mutual Ins. Co.** 467 P. 2d 963 (Sup.Ct. of Oregon) (1970).

Thus, not only the clearly articulated language of the policy but also a virtually

undeviating[3] line of precedent both in the Commonwealth, and in other jurisdictions compel the conclusion which we reach here.

Finally, no apparent "policy" considerations argue for the result for which the court below found. Thus, the fact that the plaintiff actually paid two premiums is not decisive. It is obvious that there were always potentially two vehicles, on the road at the same time, capable of generating two sources of liability for the company. The duality of risk quotient thus generated clearly could justify the policy changes without offending "public policy." Finally, since clearly there is no "ambiguity" in the pertinent policy language there is no reason to construe the policy language "against the insurer" as the plaintiff invites us so to do. Rather, text, precedent and policy all require that the obvious language and intendment of the policy be followed.

For all of these reasons, we hold that the judgment of the District Court allowing the plaintiff to recover the amount of $5,017.16 be set aside. Rather an amended judgment should be entered recovery for the plaintiff in a single amount of $1,508.56 as set forth above.

It is so Ordered:

Francis J. Larkin, J.
Mel L. Greenberg, J.
William T. Walsh, J.
This certifies that this is the OPINION of the Appellate Division in this cause.
Robert E. Fein, Clerk

[3]As noted above, the **Boudreau** case is the only Massachusetts case which is squarely on point with the instant case on the issue of double recovery. That is, it is the only case which involves a precisely identical factual situation and the same policy language as is present in the instant case. It is true that prior to **Boudreau,** the Supreme Court apparently permitted the "stacking" of policies in the case of **Johnson vs. Travelers Indemnity Company,** 359 Mass. 527 (1971). However, that case is clearly distinguishable from the instant case, first, because it involved three separate policies, each insuring a separate vehicle. More importantly, the policy language was notably different from that contained in the policy involved in the instant case. An instance of the language, **inter alia,** which sets them apart is the following from the policy here under consideration: "Regardless of the number of . . . (4) automobiles to which this policy applies, the limit of liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, . . ." This language was not present in the policies issued to the plaintiff in the **Johnson** case. Moreover, the **Johnson** type of policies were issued in 1967. Since the **Johnson** decision, defendant argues persuasively that insurers have re-written their policies to make it crystal clear that duplicate coverages, or "stacking," is not permitted, except where the policy specifically allows for it and is expressly written to provide for such coverage. See, E.G., Paragraph 6, Part I of the policy entitled, "TWO OR MORE VEHICLES." (A policy which expressly provides for separate limits of liability to apply to each motor vehicle). It will be noted that such language does not include any of the coverages which are at issue in this case. Accordingly, it is submitted that the **Johnson** case is not controlling on the issue of multiple coverages because of the differences in policy language. Additionally, the Court, in the **Johnson** case found a conflict in the language of the policy and the statute which governed Uninsured Motorist Protection. There is no such conflict in the policy involved in the instant case.